Plaintiffs-appellants Kawal Seecharan and Radicka Seecharan timely appeal from the decision of the lower court granting the motion for summary judgment filed by the defendants-appellees Ted Macy and Barbara Macy. The complaint sets forth causes of action against the Macys, the sellers, for negligent and fraudulent misrepresentations during the sale of real estate to the Seecharans, the purchasers.
The purchase agreement, signed on May 12, 1997, reveals that the parties agreed to the purchase price of $42,500 for a house located on West 31st Street in Cleveland, Ohio. The house contains four apartment units. The Macys owned the property as rental property and had never lived on the premises. The contract reflects in pertinent part that: 1) the Seecharans had the right to have the property inspected for wood-destroying insects and that the agreement would be void if the repairs exceeded $500.00; 2) the property was sold "AS IS."; and, 3) the Seecharans received a Residential Property Disclosure Form signed by the appellees. Question G of the Residential Property Disclosure Form asks:
 WOOD BORING INSECTS/TERMITES: Do you know of the presence of any wood boring insects/termites in or on the property or any existing damage to the property caused by wood boring insects/termites?
To this question the appellees checked the box next to the word no.
After moving into the home, the appellants had the home inspected for roaches. The exterminator found indications that there were termites. The exterminator advised the appellants that they had an actionable cause and that they could go after the previous owners (Depo. T. 66, 67). Mr. Seecharan stated that prior to the inspection he had never seen termites and that, before they were shown to him by the exterminator, he never knew they were in his house (Depo. T. 66). The exterminator's report indicates severe termite damage in the support beams of the basement, joists, steps, partition walls and studs (Depo. T. 80).
Both Mr. Macy and the real estate agent were with Mr. Seecharan when he went through the house prior to the purchase. Mr. Seecharan thought the house looked fine, but the only problem was the smell of cats emanating from the apartment where one tenant had owned a multitude of cats. Mr. Seecharan spent an hour, more or less, in the home. At the time the purchase agreement was signed, the real estate agent pointed out to Mr. Seecharan that he was entitled to a home inspection (Depo. T. 92, 94). Mr. Secharan believed that it was unnecessary because the house looked good and the real estate agent said that everything was fine. Mr. Macy only mentioned a drain in the basement.
During his deposition, Mr. Seecharan stated that the house had a strange smell, different from the cats (Depo. T. 111). In the basement there are small rooms where he could smell the odor (Depo. T. 114). Mr. Seecharan described the smell, Variously stating that: "It's like sort of a spoiled scent, like rotten wood."; "It smells like wood, like, in the forest. It's like a tree that fell down, like, it gets a smell, strange smell. Like decaying wood." (Depo. T. 115). Mr. Seecharan noticed this smell when he was in the basement before he purchased the home (Depo. T. 118).
Since the exterminator indicated that there was "an actionable cause," the appellants contacted an attorney. The attorney directed them to a construction consultant for an evaluation. In his six-page report, the expert, a civil engineer, stated that he was able to see termite galleries on all sides of the dwelling and that damage was substantial to main beams, sill plates, joists, partition walls and stairs leading to the first floor. The expert noted that termites are frequently found in certain geographical areas and that the house is located in one of these areas. Termites thrive in wet and humid conditions. Installation of a new sidewalk and a concrete splash block for a downspout were noted and attributed to moisture control.
The expert's report gives a lengthy explanation of the damage to the house and the repairs which had been conducted. For brevity, this court notes that the expert observed: newer structural repairs in the basement; weather protection added to the basement; several new plumbing installations; front porch deteriorated wood was replaced; the front apartment unit had a new floor installed over several of the basement termite areas; and the floor in the back apartment unit behind bath tub had been repaired. In various places in the report, the expert stated that the repair contractors may have observed termite galleries during these repairs. The expert concluded:
 In light of my engineering background, training, and experience, I am certain to a high degree of technical certainty, that is more likely than not, that due to the abundant repairs observed that someone in the past would have encountered termited wood in your house.
Attached to the appellees' motion for summary judgment is the affidavit of the appellees stating that they owned the property from 1991 until it was sold to the appellants. The property was purchased by them as an investment and that they had never lived there. The Macys affirmed that the majority of maintenance and repairs were performed by outside contractors. During the time they owned the property, they spent $11,586 for repairs by outside contractors. The Macys affirmed that during the time they owned the home they had no knowledge that the house had termites, suffered from termite damage, or had structural defects. They did not know what termites looked like or termite infested wood appeared. Also attached to the motion are six photographs taken of the open and exposed termite infested areas in the basement.
The trial court, in a well reasoned and insightful opinion, granted the appellees' motion for summary judgment.
The appellants set forth six assignments of error. The appellants' sixth assignment of error alleges a jurisdictional defect and thus will be considered first. The appellants' sixth assignment of error:
 THE COURT OF COMMON PLEAS DID NOT REVIEW THE ALTERNATIVE ARGUMENT THAT THE PLAINTIFF HAS PLEAD A CASE FOR NEGLIGENT MISREPRESENTATION IN THE COMPLAINT AT PARAGRAPH NINE WHICH STATED: "9. IN THE ALTERNATIVE, THE PLAINTIFF'S[1] SAY THE DEFENDANT'S ACTED WITH NEGLIGENCE IN MAKING A MISREPRESENTATION ABOUT THE CONDITION OF THE HOUSE IN ISSUE, PRIOR TO POINT OF SALE.
The appellants assert that the trial court's opinion failed to address the allegation raised in the complaint that the appellees had negligently misrepresented the condition of the home. While the appellants fail to cite any rule of law or case on point, it is assumed by this court that the appellants are implying that, without a statement as to the claim for negligence, no final
The trial court did indeed render a decision on the claim for negligent misrepresentation. The court held that the appellants failed to adduce any competent evidence of concealment by the appellees of the presence of termites in the house. The trial court went on to review the evidence submitted by the appellees and stated that the appellants could not prove that their reliance on the alleged misrepresentation was justifiable since they had the unfettered ability to examine the house and to have an inspection. In its final sentence, the trial court concluded by holding, "Accordingly, the evidence adduced does not create a genuine issue of fact as to the existence of fraud ormisrepresentation and [appellees] are entitled to summary judgment in their favor as a matter of law." Emphasis added.
The very language used by the trial court is indicative that the claim for negligent misrepresentation was carefully considered and rejected by the court. The trial court rendered a final order and this case is properly before this court.
The appellants' sixth assignment of error is overruled.
The appellants' first four assignments of error will be considered together as they involve similar questions of law and fact.
The appellants' first assignment of error:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DISMISSING THE PLAINTIFF'S CASE ON DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT. (MEMORANDUM OPINION AND ORDER AT 1 (UNPAGINATED)).
The appellants' second assignment of error:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DISMISSING THE PLAINTIFF'S CASE ON DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT UNDER THE THEORY THAT THE OPPOSITION EVIDENCE DID NOT, PROVE DEFENDANT-APPELLEE ENGAGED IN FRAUDULENT CONCEALMENT OF A TERMITE INFESTATION PROBLEM IN THE PLAINTIFF-APPELLANT'S HOUSE PRIOR TO POINT OF SALE. (MEMORANDUM OPINION AND ORDER AT 3 (UNPAGINATED)).
The appellants' third assignment of error:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DISMISSING THE PLAINTIFF'S CASE ON DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT UNDER THE THEORY THAT THE OPPOSITION EVIDENCE DID NOT PROVE DEFENDANT-APPELLEE ENGAGED IN FRAUDULENT CONCEALMENT OF A TERMITE INFESTATION PROBLEM IN THE PLAINTIFF-APPELLANT'S HOUSE PRIOR TO POINT OF SALE BY WAY OF RULE 702 EXPERT OPINION EVIDENCE, TO WIT: "THE REPORT OF PLAINTIFF'S EXPERT DOES NOT OFFER THE OPINION, TO THE APPROPRIATE DEGREE OF CERTAINTY, THAT THE TERMITE CONDITION EXISTED TO SUCH A DEGREE AND FOR SUCH A PERIOD OF TIME THAT A REASONABLE HOMEOWNER SHOULD HAVE BEEN AWARE OF IT." (MEMORANDUM OPINION AND ORDER AT 3 (UNPAGINATED)).
The appellants' fourth assignment of error:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY DISMISSING THE PLAINTIFF'S CASE ON DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT UNDER THE THEORY THAT THE APPELLANT'S SHOULD HAVE DISCOVERED BY WAY OF AN "UNFETTERED ABILITY TO EXAMINE THE HOUSE" LATENT DEFECTS IN THE REAL PROPERTY AT ISSUE, TO WIT: TERMITE INFESTATION. (MEMORANDUM OPINION AND ORDER AT 3 (UNPAGINATED)).
In each of these assignments of error the appellants assert that the trial court erred in granting the appellees' motion for summary judgment. For the reasons set forth below, the appellants' assertions are not well taken.
This court reviews the lower court's grant of summary judgmentde novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court.Zaslov v. The May Dept. Stores Co. (Oct. 1, 1998), Cuyahoga App. No. 74030. unreported. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Turner v. Turner (1993), 67 Ohio St.3d 337, citing toTemple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, andHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See Celotex Corp.v. Catrett (1986), 477 U.S. 317. 323.
At issue in the case sub judice is whether or not the doctrine of caveat emptor precludes the appellants from recovering damages for any structural defects in the basement of the premises purchased from the appellees. This court has held that R.C.5302.30 is a codification of the common law doctrine of caveatemptor which requires homeowners to disclose all known latent defects. Belluardo v. Blankenship (June 4, 1998), Cuyahoga App. No. 72601, unreported. In Layman v. Binns (1988), 35 Ohio St.3d 176, at the syllabus, the court held:
 The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. (Traverse v. Long [1956], 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256, approved and followed.)
The body of the Layman case is instructive. The court found steel bracing supporting a wall in the basement was a defect which was obvious and highly visible. The court rejected the notion that because the purchaser was not an expert, the purchaser should not be held to have knowledge of a defect merely because a symptom of the defect could be observed. In other words, the court specifically found that the test is whether or not the defect was open to observation. Next, the court found that a purchaser has a duty to inspect and inquire about the premises in a prudent, diligent manner. Simply stated, the court held that a non-expert purchaser is required to take note of the symptoms of a potential problem and is responsible for its investigation.
The court then turned the pivotal question, fraud. In Layman, no active misrepresentation was made by the seller, but the purchaser argued that the seller's failure to disclose a bow in the basement wall constituted fraudulent concealment. The court stated:
 An action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak. 37 American Jurisprudence 2d (1968) 196-201, Fraud and Deceit, Sections 144 and 145. This court has held that a vendor has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection. (Citations omitted.) Other jurisdictions adhere to a similar rule. (Footnote omitted.)
 The non-disclosure in this case does not rise to the level of fraud for the reason that the defect here was not latent. It could have been detected by inspection. Thus, the purchasers must show an affirmative misrepresentation or a misstatement of a material fact in order to demonstrate fraud and thereby preclude application of the doctrine of caveat emptor. This, they failed to do.
Following Layman, this court has rejected the argument that it is the true extent or seriousness of the defect which must be open and obvious to a non-expert. Smith v. Schneider (Nov. 3, 1994), Cuyahoga App. No. 66958, unreported. The cause of the defect is not required to be open and obvious, rather it is the open and obvious nature of the defect itself which invokes the defense of caveat emptor. Id. In a real estate transaction, a vendor has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection. Smith, supra. A defect is open and observable if an ordinary prudent person would discover it upon reasonable inspection. Felty v. Kwitkowski (Nov. 2, 1995), Cuyahoga App. No. 68530, unreported, citing to Tipton v. Nuzum
(1992), 84 Ohio App.3d 33. We note that in Felty, supra, this court reached its decision by relying, in large part, on photographs submitted to the trial court by the seller.
In the case now before this court, the appellants have presented evidence that there were serious structural defects in the premises prior to the purchase. Likewise, there is no disagreement that many repairs had been done to improve the property. The appellants' expert noted the damage, the repairs, and then observed that someone who performed the repairs may have noticed the termite damage. As the trial court noted, there is documentary evidence that certain repairs were performed over the years by contractors at the appellees' direction. Other documents reveal that an exterminator sprayed for roaches and set traps in the basement for rats. A review of the documents fails to note any mention of termites or the need of repair from wood boring insects. The appellees have stated that they did not themselves perform the repairs and have stated that they were unaware of the termite damage. The appellees have not contested these assertions.
The photographs taken in the basement of the premises clearly show that there is deterioration to the wooden beams in the basement. This deterioration is readily observable to an ordinarily prudent person. It does not matter that the appellants were unaware as to what termites look like or how termite damage appears or that the appellants were unaware of the extent of the damage to the home. The fact that the wood shows deterioration is sufficient to place a reasonably prudent person on notice that there was some type of a problem. It also should be remembered that Mr. Seecharan testified at this deposition that he could smell the decaying wood when he was in the basement prior to purchasing the property.
The record is clear that the appellants were informed of their right to have the property inspected. The appellants chose not to do so and failed in their duty to inspect and inquire about the premises in a prudent, diligent manner. The appellees did not fraudulently conceal a latent defect since the defect in the home was readily observable to both the human eye and nose.
Finally, this court is compelled to note that where the contract contains an "as is" clause, the risk is placed upon the purchaser as to the existence of a defect, whether or not there is a disclosure statement. Morningstar v. Smith (Aug. 22, 1996), Cuyahoga App. No. 69939, unreported. Additionally, where the purchase agreement states that the buyer purchases real property in its "as is" physical condition, the seller has no duty to disclose latent defects. Bulluardo, supra.
Thus, assuming arguendo, that the Macys either knew or should have known about the termite damage to the home and should have disclosed it on the residential disclosure form, the purchase agreement contained an "as is" clause which became effective upon the decision to forgo a home inspection prior to sale. Once the appellees chose to purchase the home without obtaining an inspection, this "as is" clause prevents recovery for any latent defect which might have existed.
The trial court properly found that there was no material issue of fact and granted the appellees' motion for summary judgment.
The appellants' first four assignments of error are not well taken.
The appellants' fifth assignment of error:
 THE COURT OF COMMON PLEAS DID NOT GRANT PLAINTIFF'S MOTION TO DEEM DISCOVERY ADMISSIONS ADMITTED AS REQUIRED BY CIVIL RULE 36 (A) AND 44.1 (A). THIS WAS AN ABUSE OF DISCRETION.
The appellants argue that the trial court abused its discretion when it failed to grant their motion to deem admissions admitted. The appellants posit that, had the court granted the motion, judgment would then have been rendered in their favor.
A review of the record shows that the appellants attached a discovery request to the complaint.[2] The caption reads "Plaintiff's first combined discovery demand". The introduction specifies that the request was made pursuant to Civ.R. 26, 33 and 34. There are but twelve questions contained in the document. Numbers one through six and nine through twelve are either interrogatories or requests for the production of documents. Numbers seven and eight are in the form of a request for an admission.
This court finds no abuse of discretion where the trial court refused to countenance the obscuring of requests for admissions in the midst of other discovery requests, especially considering the fact that the appellants' request for admissions was not designated in either the caption or the introduction of the discovery request. A failure to answer proper requests for admissions has serious consequences. Failure to provide notice to the opposition that such requests are sought circumvents the fairness imbedded in the discovery process.[3] The trial court properly denied the motion and cut short the appellants' attempt to unfairly disadvantage the appellees.
The appellants' fifth assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
JAMES M. PORTER, A.J., and MICHAEL J. CORRIGAN, J.,CONCUR.
 _________________________________ JAMES D. SWEENEY JUDGE
[1] The Court recognizes that while there are many typographical and grammatical errors in the assignments of error, putting "sics" in would break the continuity and make it difficult to read. appealable order has been rendered as is required under Civ.R. 54 (B)
[2] A copy of which was transmitted directly to the clients and not to their attorney.
[3] This type of activity puts one in mind of Francis Bacon's observation that it is the wisdom of crocodiles that sheds tears before they would devour.